UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND DERAMO | ) | CASE NO.  4:13CV1612 |
|  | ) |  |
| Plaintiff | ) | MAGISTRATE JUDGE |
|  | ) | GEORGE J. LIMBERT |
| v. | ) |  |
|  | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) |  |
| SECURITY ADMINISTRATION | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant | ) |  |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Raymond Deramo Disability Insurance Benefits (DIB).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his March 16, 2012 decision in finding that Plaintiff was not disabled because he retained the ability to perform a limited range of sedentary work and could perform jobs that existed in significant numbers in the national economy (Tr. 23-35).  Th Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I.  PROCEDURAL HISTORY

Raymond Deramo filed his application for DIB on January 30, 2010, alleging he became disabled on October 30, 2008 due to herniated discs in his neck, L5disc fusion, and left shoulder impairment (Tr. 174, 209). Plaintiff's application was denied initially and on reconsideration (Tr. 98-99). Plaintiff requested a hearing before an ALJ, and, on March 7, 2012, a hearing was held where

Plaintiff appeared with counsel and testified before an ALJ. A vocational expert (VE) also testified (Tr. 41-68).

On March 16, 2012, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 23-35). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

**II.    STATEMENT OF FACTS**

Plaintiff was born on November 19, 1962, completed the twelfth grade, and worked as a heavy equipment operator, overhead crane operator, and semi/dump truck operator (Tr. 174, 210, 211, 222). He last worked on October 10, 2008, when he was laid off. Plaintiff worked for one month in 2009 as a consultant in Mexico City (Tr. 28).

**III.   SUMMARY OF MEDICAL EVIDENCE**

Treating physician Frank Veres, D.O. completed two medical source statements regarding Plaintiff's ability to perform physical work activities (Tr. 308-309, 416-417). On January 12, 2011, Dr. Veres opined that Plaintiff could lift and/or carry between five and twenty pounds occasionally, could stand for fifteen minutes at a time, would need an at-will sit/stand options, could not climb, balance, stoop, crouch, kneel, and crawl, could not push/pull, could occasionally reach, handle, feel, and perform gross manipulation, could not work around heights, moving machinery, and temperature extremes, and would require breaks at two-hour intervals (in addition to morning, lunch, and afternoon breaks) (Tr. 308-309). Dr. Veres indicated that Plaintiff experienced severe pain (Tr. 309).

2

On January 9, 2012, Dr. Veres opined that, due to cervical spondylosis with left nerve root impingement and being left arm dominant, Plaintiff's ability to lift and carry would be affected, and that, because of a failed lumbar fusion and laminectomy, he could only sit for one hour without interruption (Tr. 416-417). The Doctor further noted that Plaintiff could not climb, stoop, crouch, kneel, and crawl, could not reach and push/pull, could occasionally handle, would require additional breaks throughout the workday, and would need an at-will sit/stand option (Tr. 416-417). Dr. Veres stated that Plaintiff experienced moderate to severe pain (Tr. 417).

The record contains treatment notes of Dr. Frank Veres and Dr. Zachary Veres from June 2009 through December 2011 of Plaintiff's complaints of chronic neck and back pain and diagnoses of lumbar and cervical degenerative disc disease and cervical spondylosis (Tr. 285-302, 349-362, 364-383). Examination findings included left upper extremity weakness, decreased cervical range of motion, positive Spurling's test, antalgic gait, and positive straight leg raising (Tr. 286, 287, 295, 296, 297, 302, 355, 380). Various medications were prescribed, including Celexa, Zoloft, Ultram, Voltaren, Mobic, Tramadol, Zoloft, and Xanax (Tr. 286, 287, 295, 296, 297, 302, 351, 354, 364, 368, 377, 380, 383). On May 13, 2010, Plaintiff was examined by Dr. Mary-Helene Massullo at the request of the Bureau of Disability Determination (Tr. 252-262). Dr. Massullo's examination findings included scars over the L5-S1 region from his lumbar disc surgery performed five years earlier, and reduced dorsolumbar spine flexion (Tr. 253-254). Cervical x-rays revealed multilevel degenerative disease and spondylosis with narrowing of the neural foramen at C5-C7 bilaterally and C3-C4 in the left (Tr. 262). Dr. Massullo's impression included "chronic low back pain per patient with radiculopathy into the left lower extremity with history of surgical intervention and fusion of L5 per patient," and "chronic cervical pain with radiculopathy into the left upper extremity and left side of his neck with history of 3 herniated discs" (Tr. 254-255). Dr. Massullo concluded:

3

> [t]his patient has had a fusion of the L5 and any occupation that would require prolonged bending, standing, traveling using his lower extremities, climbing and lifting heavy amounts would be compromised accordingly. Work from a seated position using his bilateral extremities. He is left handed dominant and he claimed he has radiculopathy in the left upper extremity and light duty would be possible (Tr. 255).

On June 9, 2010, Edmond Gardner, M.D., an agency physician, reviewed the file, and opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of about six hours in an eight-hour workday and sit for a total of about six hours in an eight-hour workday, would be limited in the pushing/pulling with his upper extremities, could never climb ladder/rope/scaffolds, could occasionally stoop and crouch, and was limited in reaching all directions (including overhead) (Tr. 263-270). This assessment was affirmed upon review of the record by agency physician W. Jerry McCloud, M.D. on September 8, 2010 (Tr. 275).

Upon a referral by Dr. Veres, Plaintiff was examined by neurosurgeon Morris W. Pulliam, M.D. on July 13, 2010 (Tr. 273-274). Dr. Pulliam reviewed a cervical scan, which showed diffuse spondylosis from C2-C3 to C6-C7 with some foraminal encroachment (Tr. 274). Dr. Pulliam did not believe Plaintiff was a candidate for cervical surgery, but felt pain management should be considered (Tr. 274).

Brian P. Brocker, M.D., also a neurosurgeon, examined Plaintiff at Dr. Veres' request on August 17, 2010 (Tr. 276-278). Plaintiff complained of constant left-sided neck pain radiating into his left shoulder and arm, as well as back pain which disrupts his sleep (Tr. 276). Examination revealed motor weakness in the left arm, hypalgesia/hypesthesia over the left C6, C7 distribution, limited range of cervical motion, positive Spurling's test, tenderness in the low back, and an antalgic gait assisted by use of a cane (Tr. 277). Dr. Brocker recommended an EMG and cervical MRI (Tr.

4

278).  The nerve conduction study showed left cervical radiculopathy (Tr. 284).  The MRI revealed no significant changes since the cervical study from June 2009; multilevel degenerative changes, and disc disease greatest at C5-C6 and C6-C7, with multilevel bilateral neural foraminal narrowing most severe at C5-C6 (Tr. 280-281, 284).  Dr. Brocker recommended conservative treatment, including medications, physical therapy, and epidural injection, with surgery only to be considered if the preceding measures fail to provide significant relief of Plaintiff's pain (Tr. 279).

Plaintiff saw Crawford Barnett, M.D. at the St. Joseph Health Center Pain Clinic on November 21, 2010 (Tr. 387-389).  Dr. Barnett reviewed the September 2010 MRI findings, which showed a "number of findings" (Tr. 388).  His examination revealed Plaintiff's slightly antalgic gait, decreased strength in his left dominant hand, paraspinal tenderness, left greater than right, over the cervical and trapezial musculatures (Tr. 388-389).  Dr. Barnett's diagnoses were cervical radiculitis, cervical axial pain, cervical disk bulge and protrusion, cervical neuroforaminal stenosis, and cervical facet arthropathy (Tr. 389).  He believed Plaintiff would benefit from a series of cervical intralaminar epidural steroid injections (Tr. 389).

On February 10, 2011, Plaintiff returned to see Dr. Barnett, who noted approximately forty percent initial pain relief with a series of injections in January 2011 (Tr. 384-386).  Dr. Barnett opined that, based on a less than optimal response from the injections and fairly significant findings on the cervical MRI, surgical intervention should be considered (Tr. 386).

Upon referral by Dr. Barnett, Plaintiff saw Kene Ugokwe, M.D. for a surgical consultation on March 22, 2011 (Tr. 342-343).  Objective findings on examination included sensory deficit and decreased light touch in the left C6 and C7 dermatomal distribution on the left side (Tr. 342).  Dr. Ugokwe's assessment was that Plaintiff had neck pain radiating into his left arm with cervical MRI findings of multilevel neuroforaminal stenosis (Tr. 343).  Dr. Ugokwe recommended, in light of failed

5

conservative therapy, that Plaintiff undergo a posterior cervical laminectomy and fusion, which was likely to improve his left arm symptoms, although he could not guarantee relief of his neck pain (Tr. 343).

Dr. Brocker examined Plaintiff on August 9, 2011, and found cervical and back joint pain/stiffness and muscle weakness/pain and difficulty walking (Tr. 363). Dr. Brocker still believed that Plaintiff should consider surgery only after conservative measures failed to provide him significant relief of his pain (Tr. 363).

Plaintiff sought treatment in the St. Joseph Health Center Emergency Department on November 28, 2011 and December 3, 2011 for severe neck pain radiating into his left arm after a fall, and neck and upper back after an altercation n a bar, respectively (Tr. 391-401, 402-415). A cervical x-ray taken December 3, 2011 revealed spondylosis at C5-C6 and C6-C7 with uncovertebral osteophytes and moderate foraminal stenosis (Tr. 404).

### IV.     SUMMARY OF TESTIMONY

Plaintiff testified that he had back surgery in 2004, followed by physical therapy (Tr. 50). Although he returned to work, he felt that his back condition never really improved (Tr. 49-50). Plaintiff testified that he has problems with his neck with pain radiating down his left arm associated with weakness in his hand (Tr. 50-52). He routinely uses a cane, prescribed by Dr. Veres a couple years earlier, unless he only has a short distance to walk (e.g., one hundred feet or less) (Tr. 52-54). Plaintiff stated that the medications he takes make him dizzy and drowsy, and cause him to shake (Tr. 56). His neck pain is worse when he has to keep his head up, for example, when sitting for longer than forty minutes (Tr. 58-59). He has tried a TENS unit, a back brace, and injections, with little relief of his neck pain (Tr. 50, 59). He is reluctant to have another surgery, i.e., having his neck fused,

since his first one was not very successful, and he still has difficulty with his lower back (Tr. 51).

The vocational expert (VE) testified that Plaintiff has past work experience as a heavy equipment operator and as a truck driver (Tr. 63). The ALJ posed a hypothetical to the VE, assuming an individual of Plaintiff's age, education, and work experience with the ability to perform light work with the following limitations:

> [h]e is unable to push and pull with the left upper extremity. He can never climb ladders, ropes or scaffolds. He can occasionally stoop and crouch. He is unable to perform overhead reaching with the left upper extremity. And he requires the use of a cane on an occasional basis for balancing (Tr. 64).

The VE testified that the hypothetical individual could not perform any of Plaintiff's past work, but could perform work as an assembler, a hand packager, and as a ticket seller (Tr. 64-65). If the same individual was limited to sedentary work, the VE testified that he could perform work as an inspector, as a polisher, and as an assembler (Tr. 65). If the same individual was limited to using his left upper extremity for occasional handling and fingering, the VE stated that the limitation would "effectively rule out" all unskilled jobs at the sedentary and light levels (Tr. 66). If the individual needed to take at least three extra breaks each day, lasting twenty to thirty minutes, the VE testified that the individual would not be able to maintain employment, and, therefore, there would be no jobs available to him at the sedentary and light levels (Tr. 66-67).

## V.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical

7

findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520© and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to

any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII.  ANALYSIS

The ALJ decided that, despite multilevel degenerative disc disease of the cervical spine, cervical radiculopathy, osteoarthritis of the left shoulder, history of lumbar spine fusion, and obesity, Plaintiff remained capable of performing sedentary work, but could not use his upper left extremity to push/pull; never climb ladders, ropes, or scaffolds; occasionally stoop and crouch, never reach overhead with the left upper extremity; and needed to use a cane on an occasional basis for balancing (Tr. 30). The ALJ also concluded that Plaintiff could not return to his past relevant work, but, relying on the testimony of a vocational expert, found that Plaintiff could perform a significant number of jobs in the national economy, and, therefore, was not disabled under the Act (Tr. 34-35).

Plaintiff raises two issues:

A.  Whether the Administrative Law Judge erred in his evaluation of the

        opinions of the Plaintiff's treating physician.

    B.    Whether substantial evidence supports the Administrative Law Judge's residual functional capacity finding (RCF).

The Court finds that substantial evidence supports the ALJ's RFC assessment and finding that Plaintiff could perform a limited range of sedentary work.

In finding that Plaintiff remained capable of performing a limited range of sedentary work, the ALJ reviewed the following evidence:

Plaintiff underwent back surgery in 2004 (Tr. 31, 252, 273); a May 13, 2010 cervical spine x-ray showed evidence of multilevel degenerative disease and spondylosis (Tr. 28, 262); an x-ray of Plaintiff's left shoulder revealed arthritis of the AC joint (Tr. 28, 261); Dr. Massullo noted that Plaintiff did not have a cane at the time of the consultative examination, and that, although he claimed to use one four times per year, it was not prescribed for him (Tr. 31, 251); Dr. Massullo's examination revealed a normal gait without a grossly apparent need for an ambulatory aid (Tr. 31, 254); Dr. Massullo opined that Plaintiff could perform light duty work from a seated position, using his bilateral upper extremities (Tr. 32, 255); Dr. Pulliman noted that Plaintiff walked with a cane, had bilateral negative straight leg raising, full joint range of motion, and no weakness or sensory loss in any extremity (Tr. 32, 273-74).

Dr. Brocker observed that Plaintiff had full 5/5 muscle strength in all extremities without focal motor weakness, except for weakness in his left arm; intact sensation apart from hypalgesia/hypesthesia at the left C6-C7 distribution; limited neck range of motion; he walked with an antalgic gait; and testing revealed left cervical radiculopathy, indicating a need for conservative treatment (Tr. 32, 277); Dr. Veres noted that Plaintiff walked with an antalgic gait (Tr. 32, 286); Plaintiff reported a forty percent improvement in his symptoms after cervical epidural steroid

injections performed between November 2010 and January 2011 (Tr. 32, 384); Dr. Barnett observed that Plaintiff had a non-antalgic gait with preserved toe and heel walking, and only slightly decreased strength in his left arm (Tr. 32, 384-385); Dr. Ugokwe described Plaintiff's gait and coordination as normal, but noted 4/5 strength in all muscle groups in the left arm, and decreased light touch in the left C6-C7 distribution (Tr. 32-33, 342-343); A May 8, 2011 CT scan showed surgical changes over the lower lumbar spine with bilateral transpedicular and rod fixation (Tr. 28, 327); and after Plaintiff reported involvement in a bar altercation in December 2011, testing revealed no fracture or sublaxation in his neck (Tr. 33, 407).

Based upon the above evidence, the ALJ correctly accounted for all of Plaintiff's credibly-established limitations in the RFC assessment. However, Plaintiff's diagnoses, alone, do not establish that his impairments resulted in disabling functional limitations. 20 C.F.R. Section 404.1521.

The ALJ correctly evaluated Dr. Veres' opinions. Plaintiff asserts that the ALJ should have given controlling weight to Dr. Veres' opinions that he was limited to sitting for one hour at a time; standing for fifteen minutes at a time; needing an at-will sit/stand option, and additional rest breaks throughout the day; cannot climb, balance, stoop, crouch, kneel, crawl, reach, push/pull, or work around heights, moving machinery, and temperature extremes; and can occasionally handle, feel, and perform gross manipulation (Pl.'s Br. at 14) (Tr. 308-309, 416-417). The Court does not agree with Plaintiff's contention.

The ALJ explained that these opinions were entitled to only limited weight, because the overall evidence did not support the degree of limitation asserted by the Doctor, and because the degree of pain and limitation expressed by Plaintiff exceeded the objective medical evidence (Tr. 34). Hence, Dr. Veres' opinions were not entitled to controlling weight, since they were inconsistent with the overall evidence. *See,* 20 C.F.R. Section 404.1527(c)(4); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d

365, 376 (6th Cir. 2013).

In this case, the ALJ found that Plaintiff had some functional limitations. The ALJ limited Plaintiff to performing a range of sedentary work that accounted for all of his functional limitations. The Plaintiff has not sustained his burden to prove disability. 42 U.S.C. Section 423(d)(5)(A); 20 C.F.R. Section 404.1512(a). Plaintiff has not furnished medical and other evidence that can be used to support his contentions about his impairment(s).

As a result, substantial evidence supports the ALJ's evaluation of the evidence, and the Court affirms the ALJ's decision that Plaintiff was not disabled.

## VIII.  CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a limited range of sedentary work and could perform jobs that existed in significant numbers in the national economy, and, therefore, was not disabled. Hence, he is not entitled to DIB.

Dated: April 21, 2014  /s/George J. Limbert
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE